IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

MELISSA T.,[1]

        Plaintiff,

v.

COMMISSIONER of Social
Security,

        Defendant.

Case No. 3:18-cv-00221-SU

**OPINION
AND ORDER**

SULLIVAN, United States Magistrate Judge:

        Plaintiff Melissa T. brings this action pursuant to the Social Security Act (the "Act"), 42 U.S.C. § 405(g), to obtain judicial review of a final decision of the Commissioner of Social Security (the "Commissioner"). The Commissioner denied plaintiff Supplemental Security

---

[1] In the interest of privacy, these Findings and Recommendation use only the first name and initial of the last name for non-governmental parties and their immediate family members.

Income ("SSI") under Title XVI of the Act. 42 U.S.C. § 1381 *et seq.* For the following reasons, the Court REVERSES and REMANDS the Commissioner's decision for further proceedings.

## PROCEDURAL BACKGROUND

Plaintiff protectively filed for SSI on January 9, 2014, alleging a disability onset date of August 1, 2011. Tr. 390-97.[2] Her claim was denied initially on May 7, 2014, and upon reconsideration on July 18, 2014. Tr. 301-30. On September 24, 2014, plaintiff requested a hearing, which was held by video on July 6, 2016, before Administrative Law Judge ("ALJ") Katherine Weatherly. Tr. 284-300, 344-47. Plaintiff appeared and testified at the hearing, represented by counsel; a vocational expert ("VE"), Francene Geers, also testified. *Id.* On August 22, 2016, the ALJ issued a decision finding plaintiff not disabled under the Act and denying benefits. Tr. 256-72. Plaintiff requested Appeals Council review, which was denied December 7, 2017. Tr. 1-6. Plaintiff then sought review before this Court.[3]

## FACTUAL BACKGROUND

Plaintiff was born in 1982. Tr. 390. She experiences depression with agoraphobia, panic disorder, posttraumatic stress disorder, conversion disorder, fibromyalgia, Sjogren's syndrome, periodic limb movement disorder, ocular migraines, bilateral patellar subluxation, and interstitial cystitis. Tr. 61, 111, 127, 519, 533, 631, 808, 815, 905, 924. She has a daughter, and they live with plaintiff's mother. Tr. 287. Plaintiff completed high school through a correspondence course. Tr. 288. Plaintiff has no work history. Tr. 294.

## LEGAL STANDARD

---

[2] "Tr." cites are to the official transcript of the Administrative Record. (Docket Nos. 10, 11).
[3] The parties have consented to the jurisdiction of the Magistrate Judge pursuant to 28 U.S.C. § 636. (Docket No. 4).

The court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record. *Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quotation omitted). The court must weigh "both the evidence that supports and detracts from the [Commissioner's] conclusion." *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986). "Where the evidence as a whole can support either a grant or a denial, [the court] may not substitute [its] judgment for the ALJ's." *Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007) (citation omitted); *see also Burch v. Barnhart*, 400 F.3d 676, 680-81 (9th Cir. 2005) (holding that the court "must uphold the ALJ's decision where the evidence is susceptible to more than one rational interpretation"). "[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quotation omitted).

The initial burden of proof rests upon the claimant to establish disability. *Howard v. Heckler*, 782 F.2d 1484, 1486 (9th Cir. 1986). To meet this burden, the claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The Commissioner has established a five-step process for determining whether a person is disabled. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520, 416.920. First, the Commissioner determines whether a claimant is engaged in "substantial gainful activity"; if so, the claimant is not disabled. *Yuckert*, 482 U.S. at 140; 20 C.F.R. §§ 404.1520(b), 416.920(b).

At step two, the Commissioner determines whether the claimant has a "medically severe impairment or combination of impairments." *Yuckert*, 482 U.S. at 140-41; 20 C.F.R. §§ 404.1520(c), 416.920(c). A severe impairment is one "which significantly limits [the claimant's] physical or mental ability to do basic work activities[.]" 20 C.F.R. §§ 404.1520(c) & 416.920(c). If not, the claimant is not disabled. *Yuckert*, 482 U.S. at 141. At step three, the Commissioner determines whether the impairments meet or equal "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." *Id.*; 20 C.F.R. §§ 404.1520(d), 416.920(d). If so, the claimant is conclusively presumed disabled; if not, the analysis proceeds. *Yuckert*, 482 U.S. at 141.

At this point, the Commissioner must evaluate medical and other relevant evidence to determine the claimant's "residual functional capacity" ("RFC"), an assessment of work-related activities that the claimant may still perform on a regular and continuing basis, despite any limitations his impairments impose. 20 C.F.R. §§ 404.1520(e), 404.1545(b)-(c), 416.920(e), 416.945(b)-(c). At the fourth step, the Commissioner determines whether the claimant can perform "past relevant work." *Yuckert*, 482 U.S. at 141; 20 C.F.R. §§ 404.1520(e), 416.920(e). If the claimant can work, he is not disabled; if he cannot perform past relevant work, the burden shifts to the Commissioner. *Yuckert*, 482 U.S. at 146 n.5. At step five, the Commissioner must establish that the claimant can perform other work that exists in significant numbers in the national economy. *Id.* at 142; 20 C.F.R. §§ 404.1520(e) & (f), 416.920(e) & (f). If the Commissioner meets this burden, the claimant is not disabled. 20 C.F.R. §§ 404.1566, 416.966.

## THE ALJ'S DECISION

At step one, the ALJ found that plaintiff had not engaged in substantial gainful activity since the application date. Tr. 261. At step two, the ALJ found that plaintiff had these severe

impairments: fibromyalgia, Sjogren's syndrome, mild periodic limb movement disorder, ocular migraines, bilateral patellar subluxation, interstitial cystitis, conversion disorder, dysthymia, and panic disorder. *Id.* At step three, the ALJ found that plaintiff did not have an impairment or combination thereof that met or equaled a listed impairment. Tr. 262. The ALJ considered, *inter alia*, Listings 12.04 (Affective Disorders) and 12.06 (Anxiety-Related Disorders). The ALJ then found that plaintiff had the RFC to perform sedentary work, with certain physical, cognitive, and social restrictions. Tr. 264. In making this determination, the ALJ gave "no weight" to the opinions of Heather Holmes, M.D.,[4] plaintiff's treating primary care physician; Laura Schaben, M.D., plaintiff's treating neurologist; and William Herz, M.D., plaintiff's treating psychiatrist; and gave "limited weight" to the opinions of consultative examining neuropsychologist William Trueblood, Ph.D. Tr. 268-69. The ALJ also found plaintiff's symptom testimony "not entirely consistent" with the medical evidence and other evidence of record. Tr. 265. At step four, the ALJ found that plaintiff had no past relevant work. Tr. 271. At step five, the ALJ found that plaintiff could adjust to jobs that exist in significant numbers in the national economy, including board assembler, addresser, and patcher. Tr. 271-72. The ALJ thus found plaintiff not disabled under the Act and not entitled to benefits. Tr. 272.

## ANALYSIS

Plaintiff argues that the ALJ erred in four ways: (1) failing to find that plaintiff met the listed impairments for Listings 12.04 and 12.06;[5] (2) improperly rejecting the medical opinions of

---

[4] The ALJ erroneously refers to Dr. Holmes as "Heather Holmes, Ph.D." Tr. 269.
[5] Although plaintiff alleges ALJ error as to Listing 12.07 (Somatoform Disorders), the ALJ did not address Listing 12.07 in her decision, and it does not appear from the Record that plaintiff ever asserted disability under Listing 12.07 during the administrative process, and instead raised it for the first time in her briefing before the Court. The Court thus only considers Listings 12.04 and 12.06.

Drs. Holmes, Schaben, Trueblood, and Herz; (3) improperly discounting plaintiff's testimony; and (4) failing to include all of plaintiff's limitations in the RFC and VE hypothetical questions. The Court finds that the ALJ erred in each of these regards.

## I. Step Three Listings

At step three, the ALJ found that plaintiff did not satisfy certain disability listing criteria, including Listing 12.04 (Affective Disorders) and 12.06 (Anxiety-Related Disorders). The ALJ found that plaintiff did not meet the listings' "paragraph B" criteria because she had only mild or moderate restrictions, and no extended episodes of decompensation. Tr. 262-63. The ALJ found that plaintiff also did not meet the listings' "paragraph C" criteria. Tr. 263-64. Plaintiff argues that the ALJ's findings entail that she meets the listings' paragraph A criteria, and that Dr. Trueblood and Herz' assessments entail that she meets the listings' paragraph B criteria.

"To meet a listed impairment, a claimant must establish that he or she meets each characteristic of a listed impairment relevant to his or her claim." *Tackett v. Apfel*, 180 F.3d 1094, 1099 (9th Cir. 1999) (italics omitted). For a claimant to show that his impairment matches a listing, it must meet all of the specified medical criteria; an impairment that manifests only some of those criteria, no matter how severely, does not qualify. *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990) (footnotes and citations omitted), *superseded by statute on other grounds as stated in Kennedy v. Colvin*, 738 F.3d 1172, 1174 (9th Cir. 2013)

> For a claimant to qualify for benefits by showing that his unlisted impairment, or combination of impairments, is "equivalent" to a listed impairment, he must present medical findings equal in severity to all the criteria for the one most similar listed impairment.

*Sullivan*, 493 U.S. at 530-31. A determination of medical equivalence must rest on objective medical evidence. *See Lewis v. Apfel*, 236 F.3d 503, 513-14 (9th Cir. 2001); *Tackett v. Apfel*, 180 F.3d 1094, 1100 (9th Cir. 1999) ("Medical equivalence must be based on medical findings. A

generalized assertion of functional problems is not enough to establish disability at step three." (quotation omitted)); 20 C.F.R. § 404.1529(d)(3) ("In considering whether your symptoms, signs, and laboratory findings are medically equal to . . . a listed impairment, we will look to see whether your symptoms, signs, and laboratory findings are at least equal in severity to the listed criteria. However, we will not substitute your allegations of pain or other symptoms for a missing or deficient sign or laboratory finding to raise the severity of your impairment(s) to that of a listed impairment."). "The mere diagnosis of an impairment listed in Appendix 1 is not sufficient to sustain a finding of disability." *Key v. Heckler*, 754 F.2d 1545, 1549 (9th Cir. 1985). Instead, all the specified medical criteria must be met or equaled. *Id.* at 1550.

Plaintiff's argument as to why she meets Listings 12.04[6] and 12.06[7] rely on Dr. Trueblood and Herz' opinions. Plaintiff argues that Dr. Trueblood's December 6, 2012, Mental Residual Function Capacity Report assessed marked limitations in the first two paragraph B criteria, activities of daily living and social functioning, Tr. 635; and that Dr. Herz' May 28, 2014, Medical Source Statement assessed marked limitations in the second and third paragraph B criteria, social functioning, and concentration, persistence, or pace, Tr. 853-854. Plaintiff argues that because the Court should credit these opinions as true, the Court should find that plaintiff meets the listings. As discussed below, the ALJ erred in assessing Drs. Trueblood's and Herz' opinions. The ALJ must thus reassess on remand whether plaintiff fulfills the criteria of Listings 12.04 and 12.06.

---

[6] Former listing 12.04, Affective Disorders, in effect December 18, 2007, through September 28, 2016. 20 C.F.R. Part 404, Subpt. P, App. 1, § 12.04; *archived at* https://secure.ssa.gov/poms.nsf/lnx/0434132009; *see also Jenkins v. Astrue*, 815 F. Supp. 2d 1145, 1153 (D. Or. 2011).

[7] Former listing 12.06, Anxiety-Related Disorders, in effect December 18, 2007, through September 28, 2016. 20 C.F.R. Part 404, Subpt. P, App. 1, § 12.06; *archived at* https://secure.ssa.gov/poms.nsf/lnx/0434132009; *see also Evenhus v. Astrue*, 815 F. Supp. 2d 1154, 1159 (D. Or. 2011).

*See, e.g., Tammy L.O. v. Commissioner*, No. 3:17-cv-774-SI, 2018 WL 3090196, at *15 (D. Or. June 20, 2018). Nonetheless, as discussed below, it would not be proper for the Court to credit as true those physicians' opinions at this stage of review, and so it cannot be determined as a matter of law at this stage that plaintiff meets these listings.

The ALJ erred her step three findings, and must reconsider whether plaintiff meets Listings 12.04 and 12.06 after reassessing Drs. Trueblood's and Herz' opinions.

## II.     Treating and Examining Medical Opinions

The ALJ gave no weight to the medical opinions of Drs. Holmes, Schaben, and Herz, and limited weight to those of Dr. Trueblood. Tr. 268-69. Plaintiff argues that the ALJ relied on improper legal standards and insufficient evidence in weighing those opinions.

The weight given to the opinion of a physician depends on whether the physician is a treating, examining, or nonexamining physician. *Holohan v. Massanari*, 246 F.3d 1195, 1202 (9th Cir. 2001) (citing 20 C.F.R. § 404.1527). If a treating or examining physician's opinion is not contradicted by another physician, the ALJ may only reject it for clear and convincing reasons. *Id.* (treating physician); *Widmark v. Barnhart*, 454 F.3d 1063, 1067 (9th Cir. 2006) (examining physician). Even if it is contradicted by another physician, the ALJ may not reject the opinion without providing specific and legitimate reasons supported by substantial evidence in the record. *Orn*, 495 F.3d at 632; *Widmark*, 454 F.3d at 1066. "An ALJ can satisfy the 'substantial evidence' requirement by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014) (quotation omitted).

A. Dr. Holmes

Heather Holmes, M.D., had been plaintiff's treating primary care physician since at least October 2014. Tr. 831. In April 2016, Dr. Holmes took over plaintiff's medication management from Dr. Herz. 925-927. Dr. Holmes completed a "Functional Limits Assessment" form for the Oregon Department of Human Services on November 28, 2014, in which she opined that plaintiff could not participate in work activities for at least one year. Tr. 830. She also wrote, in three letters, that plaintiff's psychiatric conditions, along with her other medical conditions, precluded her from maintaining employment and impaired her ability to perform activities of daily living. Tr. 831, 832, 933.

The ALJ gave Dr. Holmes' opinions "no weight" because they were "inconsistent with the conservative treatment of [plaintiff's] mental impairments" and inconsistent with treatment records containing observations of normal mood and affect. Tr. 269.[8] These are not specific, legitimate reasons to assign Dr. Holmes' opinions no weight. The ALJ did not explain how plaintiff's treatment was "conservative," and to the contrary, the record shows aggressive treatment of mental impairments. Plaintiff has pursued individual and group counseling. Tr. 15, 103, 114. Plaintiff's doctors have worked extensively to adjust plaintiff's multiple medications to manage her mental symptoms, while also managing pain and physical symptoms. *E.g.*, Tr. 111, 113, 619, 833, 850, 925. Plaintiff has undergone numerous laboratory workups, surgeries, and diagnosing testing. *E.g.*, 486, 489, 493-94, 537-38, 746, 754-55, 756-57, 761-62, 783-84, 791-93, 794, 796, 802-03, 860-61, 878, 889-90, 940-44. The ALJ herself discussed many of these approaches to treatment. Tr. 265-69. The record does not reflect a history of conservative

---

[8] "I note that the claimant's ability to handle work situations is based solely upon her own complaints and not work experience, as the claimant testified that she has never worked." Tr. 269.

treatment. *See Tammy L.O. v. Comm'r*, No. 3:17-cv-774-SI, 2018 WL 3090196, at *13 (D. Or. June 20, 2018). As to purported mood and affect, the ALJ has neglected numerous instances where plaintiff's observed mood was anxious or depressed. *E.g.*, Tr. 110, 135, 150, 167, 535, 834, 847, 851, 861, 923, 926. Further, the ALJ may not isolate instances of some minor improvement, or of assorted days where plaintiff was not expressing her mental impairments facially, and ignore an overall, longstanding history of psychological impairment. *See Ghanim v. Colvin*, 763 F.3d 1154, 1164 (9th Cir. 2014) (holding that ALJ may not cherry-pick isolated instances of improved psychological symptoms when the record as a whole reflects longstanding psychological disability).

Further, an "ALJ's general assertion that [a] doctor's opinion 'is not consistent with the record as a whole and is internally inconsistent,' and that plaintiff followed a conservative course of treatment, do not rise to the level of specific and legitimate reasons for rejecting the opinion of a treating medical source." *Hill v. Berryhill*, No. 6:16-cv-02387-AA, 2018 WL 588998, at *4 (D. Or. Jan. 25, 2018) (quoting *Garrison*, 759 F.3d at 1012). "The ALJ's rationales amount to 'boilerplate language that fails to offer a substantive basis' for an ALJ's conclusion, and is not a permissible basis for rejecting a medical source opinion." *Id.* (quoting *Garrison*, 759 F.3d at 1012-13).

> Additionally, although a plaintiff following a conservative course of treatment is a specific and legitimate reason for doubting that plaintiff's subjective symptom testimony, it is not a reason to give little weight to a medical source opinion, unless the ALJ also proves the medical source opinion was based primarily on the plaintiff's subjective testimony.

*Id.* (citation omitted); *Tomasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008)).

The ALJ did not give sufficient, valid for discounting Dr. Holmes' opinions, much less for assigning them "no weight."

## B. Dr. Schaben

Dr. Laura Schaben had been plaintiff's treating neurologist since at least October 2012. Tr. 818. Dr. Schaben opined in a March 20, 2015, letter that plaintiff's combined neurological and psychiatric conditions rendered "total disability." Tr. 808. As with Dr. Holmes, the ALJ gave Dr. Schaben' opinions "no weight" because they were "inconsistent with the conservative treatment of [plaintiff's] mental impairments" and inconsistent with treatment records containing repeated observations of normal mood and affect. Tr. 269. The ALJ stated that Dr. Schaben's opinions were inconsistent with treatment notes regarding plaintiff "doing well" as to migraine headaches and receiving "good benefits" from fibromyalgia medication. *Id.*

As with Dr. Holmes' opinions with regard to purported "conservative" treatment and inconsistencies with observations of normal mood and affect, these are not legitimate reasons for discounting Dr. Schaben's opinions. Likewise, the ALJ may not isolate two instances of plaintiff's "doing well" as to migraines and receiving "good benefits" regarding fibromyalgia medications as a basis to discount a treating physician's opinion. *See Garrison*, 759 F.3d at 1017. These instances are also contradicted by many treatment notes noting the opposite. *E.g.*, Tr. 17, 802-03, 818-19, 820-22, 823-24, 825-26, 827-29, 919-920. The ALJ did not give sufficient, valid reasons for discounting Dr. Schaben's opinions.

## C. Dr. Herz

William Herz, M.D., began as plaintiff's treating psychiatrist by at least March 2014. Tr. 840. On May 28, 2014, Dr. Herz completed a "Medical Source Statement of Ability to Do Work-Related Activities (Mental)" that assessed "marked" limitations in plaintiff's ability to understand, remember, and carry out instructions, in social interactions, and in responding to changes in the work setting. Tr. 853-55. Dr. Herz also completed a "Functional Limits Assessment" form for

Oregon Department of Human Services on November 20, 2014, in which he opined that plaintiff could not participate in work activities for at least one year. Tr. 862. The ALJ gave Dr. Herz' opinions "no weight," because they were based primarily on plaintiff's "self-reported limitations," were inconsistent with plaintiff's self-reported activities, and were inconsistent with treatment records observing normal mood and affect. Tr. 268

These are not valid reasons to discount Dr. Herz' opinions. First, they were not based "primarily" on plaintiff's self-reports, but also cited, e.g., Dr. Herz' in-person observations of plaintiff, reports from other medical providers, and information from family members. Tr. 113, 121-23, 124-127, 837-39, 841-44, 846-49, 850-52. Further, in psychiatry, "[d]iagnoses will always depend in part on the patient's self-report, as well as on the clinician's observations of the patient. But such is the nature of psychiatry." *Buck v. Berryhill*, 869 F.3d 1040, 1049 (9th Cir. 2017). A psychiatrist's "partial reliance on [a plaintiff's] self-reported symptoms is thus not a reason to reject his opinion." *Id.*[9] Further, as discussed, the ALJ may not isolate instances for improved mood as a basis to reject a physician's opinion.

### D. Dr. Trueblood

Neuropsychologist William Trueblood, Ph.D., completed a "Neuropsychological Screening Examination Report" on December 6, 2012, for the state Department of Human Services. Tr. 621-32. He also completed a "Mental Residual Function Capacity Report" and "Rating of Impairment Severity Report," the latter of which assessed marked limitations in

---

[9] The ALJ also stated that reports of plaintiff's social limitations were contradicted by her participation in group therapy. This comparison is completely inapposite. The ability to participate in a structured, facilitated, therapeutic environment whose very purpose may be to enable interpersonal interaction among those who otherwise find it extremely difficult says nothing about social capabilities in other contexts, especially in a work setting. *See Hills v. Comm'r*, No. 6:14-cv-01614-CL, 2015 WL 13730937, at *10 (D. Or. Dec. 10, 2015), *report and recommendation adopted*, 2016 WL 738757 (Feb. 23, 2016).

activities of daily living and in social functioning; assessed moderate limitations in concentration, persistence, or pace; and found three episodes of decompensation. Tr. 633-36. The ALJ gave Dr. Trueblood's opinions "limited weight," due to conservative treatment of plaintiff's mental impairments, and inconsistencies with his observations and narrative summary.

These are not valid reasons to discount Dr. Trueblood's testimony. The fact that plaintiff's treatment has been far from conservative is discussed above. As for the ALJ's additional reasons for discounting Dr. Trueblood's opinions, they also fail. The ALJ's conclusory statement that Dr. Trueblood's opinions are inconsistent with his observations and narrative testimony gives no explanation or examples beyond that conclusion. Although Dr. Trueblood did end his report with a check-the-box form, that form was based on the preceding eleven pages of written report, including the administration of multiple tests, so the opinions cannot be faulted merely for summarizing the conclusions with a check-the-box form. The "Mental Residual Function Capacity Report" and "Rating of Impairment Severity Report" provide narrative explanations for rating the degree of plaintiff's limitations. Tr. 633-36.

\* \* \*

The ALJ did not provide sufficient, legitimate reasons for discounting the opinions of Drs. Holmes, Schaben, Herz, or Trueblood. On remand, the ALJ shall reassess these doctors' opinions in accordance with the appropriate legal standards, and with the above.

### III. Plaintiff's Symptom Testimony

The ALJ found that, although plaintiff's impairments could reasonably be expected to cause her alleged symptoms, her testimony concerning the intensity, persistence, and limiting effects of those symptoms was "not entirely consistent with the medical evidence and other

evidence in the record." Tr. 265. Plaintiff argues that the ALJ erred in giving only generic reasons to justify discounting her testimony, and in mischaracterizing the evidence.

When deciding whether to accept the subjective symptom testimony of a claimant, the ALJ must perform a two-stage analysis. First, the claimant must produce objective medical evidence of one or more impairments which could reasonably be expected to produce some degree of symptoms. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007). The claimant is not required to show that the impairment could reasonably be expected to cause the severity of the symptoms, but only to show that it could reasonably have caused some degree of the symptoms. *Id.* In the second stage of the analysis, the ALJ must assess the claimant's testimony regarding the severity of the symptoms. *Id.* The ALJ must specifically identify the testimony he does not credit and must explain what evidence undermines the testimony. *Holohan v. Massanari*, 246 F.3d 1195, 12028 (9th Cir. 2001). General findings are insufficient to support an adverse determination; the ALJ must rely on substantial evidence. *Id.* In order to discredit a plaintiff's testimony regarding the degree of impairment, the ALJ must make a "determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony." *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002). The ALJ may consider many factors in weighing a claimant's subjective testimony, including

> ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities.

*Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996). "If the ALJ's finding is supported by substantial evidence, the court may not engage in second-guessing." *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008) (quotation omitted).

The ALJ's statement that plaintiff's testimony regarding symptoms was not "entirely explained by the medical evidence and other evidence in the record," Tr. 265, is a generic conclusion that does not suffice to explain how the testimony is purportedly inconsistent with the evidence. The ALJ did not offer any specifics of inconsistencies as to the record or to the testimony, or explain this conclusion. The ALJ only broadly referred to her recitation of the medical evidence, without tying that summary to this specific conclusion. This is insufficient to reach a finding of inconsistency regarding symptom testimony. *See Brown-Hunter v. Colvin*, 806 F.3d 487, 489 (9th Cir. 2015).

Elsewhere in the ALJ's decision, she makes certain assertions that *could* be interpreted as reasons to find inconsistencies regarding the testimony. Tr. 270. However, to go beyond the ALJ's statements and attempt to graft an interpretation of these remarks that corresponds to the ALJ's earlier conclusion regarding symptom testimony would go beyond the Court's proper role in evaluating an administrative decision. The Court may not substitute its conclusions for the ALJ's, nor speculate on the grounds for the ALJ's conclusions. *See Treichler v. Commissioner*, 775 F.3d 1090, 1103 (9th Cir. 2014). Even so, these passing remarks would not be competent to find plaintiff's testimony inconsistent with the record. Although plaintiff homeschooled her daughter, plaintiff's mother did the vast majority of caring for the daughter ("80% of time," Tr. 420). The fact that plaintiff engages in such limited activities as playing with her daughter, tending to chickens, and shopping for groceries does not contradict plaintiff's testimony. *See Vertigan v. Halter*, 260 F3d 1044, 1050 (9th Cir. 2001). "One does not need to be utterly incapacitated in order to be disabled." *Id.* (quotation omitted). Plaintiff's activities are also interrupted by frequent naps, as the ALJ noted. Tr. 265.

Thus, the ALJ erred by failing to provide specific grounds, based on substantial evidence, for discounting plaintiff's symptom testimony.

## IV. Residual Functional Capacity

Between steps three and four, the ALJ determined that plaintiff had the RFC to perform sedentary work with certain physical, cognitive, and social limitations. Tr. 264. Plaintiff argues that, in light of the above alleged ALJ errors, the ALJ failed to assess all of plaintiff's limitations, and thus to include them in the RFC.

The RFC "is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis." SSR 96-8p, at *1, 1996 WL 374184 (July 2, 1996). The "RFC is what one can still do despite one's limitations." *Garrison*, 759 F.3d at 1011 (alteration, quotation omitted) (citing 20 C.F.R. § 416.945(a)(1)). "The RFC assessment must be based on *all* of the relevant evidence in the case record," including medical evidence, lay witness statements, and the effects of plaintiff's symptoms. SSR 96-8p, at *5 (emphasis in original). "The RFC assessment must include a discussion of why reported symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical and other evidence." *Id.*, at *7. The ALJ must consider the "total limiting effects" of all of the medically determinable impairments, both "severe" and "non-severe," in determining the plaintiff's RFC, including the effect of pain. 20 C.F.R. §§ 404.1545(e), 416.945(e). The ALJ is responsible for translating the claimant's medical conditions into functional limitations in the RFC. *See Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1174 (9th Cir. 2008). Ultimately, the RFC is sufficient if it is "consistent with restrictions identified in the medical testimony." *Id.*

For the same reasons that the ALJ erred in assessing the physicians', and plaintiff's, testimony, the ALJ erred in assessing the RFC. On remand, the ALJ must reassess plaintiff's RFC after reevaluating this evidence.

## V. Vocational Expert Hypothetical Questions

At the hearing, the ALJ posed multiple questions to the VE regarding a hypothetical individual with the limitations the ALJ had assessed plaintiff as having, and asked whether jobs existed in the national economy for such an individual, considering plaintiff's age, education, work experience, and RFC. Tr. 271, 294-98. Based thereon, the ALJ held that plaintiff was capable of successfully adjusting to other jobs that existed in significant numbers in the national economy. Tr. 272. Plaintiff argues that, in light of the above alleged ALJ errors, the ALJ failed to assess all of plaintiff's limitations, and thus to include them in the VE hypothetical questions.

When a claimant establishes that he is unable to perform past relevant work, the burden shifts to the Commissioner to prove that the claimant is capable of successfully transitioning to an alternate job within his RFC that exists in significant numbers in the national economy. *Rodriguez v. Bowen*, 876 F.2d 759, 761 (9th Cir. 1989). To meet this burden, the ALJ may rely on VE testimony, but the hypothetical posed to the VE must consider all of the claimant's limitations supported by the record. *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 886 (9th Cir. 2005). The hypothetical must be "accurate, detailed, and supported by the medical record." *Tackett*, 180 F.3d at 1101. "If a hypothetical fails to reflect each of the claimant's limitations supported by 'substantial evidence,' the expert's answer has no evidentiary value." *Osenbrock v. Apfel*, 240 F.3d 1157, 1167 (9th Cir. 2001) (citation omitted). An ALJ is not required to incorporate limitations based on properly discounted evidence. *Batson*, 359 F.3d at 1197. The hypothetical need only include credible limitations "based on medical assumptions supported by substantial

evidence in the record." *Osenbrock v. Apfel*, 240 F.3d 1157, 1165 (9th Cir. 2001). A plaintiff cannot show a step five error merely by restating arguments that the ALJ improperly discounted certain testimony, when the ALJ did not so err. *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1175-76 (9th Cir. 2008).

Because the ALJ improperly discounted the physicians' and plaintiff's opinions and testimony, formed an invalid RFC as a result, and must reassess that evidence, the ALJ must also reassess the VE hypothetical questions, and receive answers to those questions from a VE that reflect a proper evaluation of the record. *See Osenbrock*, 240 F.3d at 1163; *Stillwater v. Commissioner*, 361 F. App'x 809, 812 (9th Cir. 2010). On remand, the ALJ must reassess the VE hypothetical questions after reevaluating this evidence and the RFC.

## VI. Remedy

It lies within the district court's discretion whether to remand for further proceedings or to order an immediate award of benefits. *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000). "Remand for further administrative proceedings is appropriate if enhancement of the record would be useful. Conversely, where the record has been developed fully and further administrative proceedings would serve no useful purpose, the district court should remand for an immediate award of benefits." *Benecke v. Barnhart*, 379 F.3d 587, 593 (9th Cir. 2004) (citation and italics omitted). This "credit-as-true" rule has three steps: first, the court "ask[s] whether the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion"; second, if the ALJ has erred, the court "determine[s] whether the record has been fully developed, whether there are outstanding issues that must be resolved before a determination of disability can be made, and whether further administrative proceedings would be useful"; and third, if the court "conclude[s] that no outstanding issues remain and further

proceedings would not be useful," it may "find[] the relevant testimony credible as a matter of law . . . and then determine whether the record, taken as a whole, leaves not the slightest uncertainty as to the outcome of the proceeding." *Treichler v. Comm'r*, 775 F.3d 1090, 1100-01 (9th Cir. 2014) (quotations, citations, and alterations omitted). The court may then "remand to an ALJ with instructions to calculate and award benefits." *Garrison*, 759 F.3d at 1020. If, "even though all conditions of the credit-as-true rule are satisfied, an evaluation of the record as a whole creates serious doubt that a claimant is, in fact, disabled," the court should remand for further proceedings. *Garrison*, 759 F.3d at 1021.

The ALJ erred in her assessment of the physicians' opinions and plaintiff's testimony, evaluation of the listings' criteria, and formulation of the RFC and VE hypothetical questions. However, outstanding issues remain regarding a determination of disability on each of these issues, and further proceedings would be useful to determine the weight to given these statements and opinions. Remand for an immediate award of benefits is not justified in this case, and the Court instead remands for further administrative proceedings.

## CONCLUSION

For these reasons, and pursuant to 42 U.S.C. § 405(g), Sentence Four, the Court REVERSES and REMANDS the Commissioner's decision for further administrative proceedings consistent with this Opinion and Order.

IT IS SO ORDERED.

DATED this 14th day of February, 2019.

/s/ Patricia Sullivan
PATRICIA SULLIVAN
United States Magistrate Judge